CLARE E. CONNORS
United States Attorney
District of Hawaii

HARRY YEE
Assistant U.S. Attorney
Room 6-100, PJKK Federal Bldg.
300 Ala Moana Boulevard
Honolulu, Hawaii 96850
Telephone: (808)-440-9290
Email: Harry.Yee1@usdoj.gov

JEREMY N. HENDON
Trial Attorney, Tax Division
U.S. Department of Justice
P.O. Box 683, Ben Franklin Station
Washington, D.C. 20044-0683
 (202) 353-2466(t)
 (202) 307-0054(f)
Email: Jeremy.Hendon@usdoj.gov

Attorneys for UNITED STATES OF AMERICA

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| OSAMU KUROTAKI,<br><br>    Plaintiff,<br><br>    vs.<br><br>UNITED STATES OF AMERICA,<br>THE UNITED STATES DEPARTMENT<br>OF THE TREASURY and THE<br>INTERNAL REVENUE SERVICE,<br><br>    Defendants. | Case No. 1:22-cv-00063-JMS-WRP<br><br>**UNITED STATES' ANSWER<br>TO COMPLAINT AND<br>COUNTERCLAIM;<br>CERTIFICATE OF SERVICE** |

- 1 -

UNITED STATES OF AMERICA,

    Counterclaim Plaintiff,

    vs.

OSAMU KUROTKI,

    Counterclaim Defendant.

_____

## <u>UNITED STATES' ANSWER</u>

The United States of America answers Plaintiff's complaint as follows:

### FIRST DEFENSE

Plaintiff has improperly named the United States Department of the Treasury and the Internal Revenue Service as defendants. "[T]he Treasury Department and the IRS are not entities against which suit may be brought." *Lopez v. United States*, 129 F. Supp. 2d. 1284, 1292 (D. N.M. 2000), *aff'd*, 21 F. App'x 879 (10th Cir. 2001) (citing *Whitcombe v. United States Dep't of Treasury*, 1991 WL 1690 (9th Cir. 1991); *Castleberry v. Alcohol, Tobacco & Firearms Div. of Treasury Dep't*, 530 F.2d 672, 673 n.3 (5th Cir. 1976)). As a result, they are not proper parties to this action. *Krouse v. U.S. Gov't Treasury Dep't Internal Revenue Serv.*, 380 F. Supp. 219, 221 (C.D. Cal. 1974) (citing *Blackmar v. Guerre*, 342 U.S. 512, 515 (1952)). Thus, the only proper defendant in this case is the United States of America.

SECOND DEFENSE

Should Plaintiff raise an argument in this case as to why he is entitled to the refund he seeks that was not included in his administrative claim for refund submitted to the IRS, this Court lacks subject matter jurisdiction to hear such argument under the doctrine of variance.

THIRD DEFENSE

Plaintiff has waived any argument in this case as to why he is entitled to the refund he seeks that he did not previously raise administratively to the IRS or the Independent Office of Appeals before the FBAR penalties assessment against him was made.

FOURTH DEFENSE

This Court lacks jurisdiction under the Administrative Procedures Act, 5 U.S.C. § 701 *et seq.* ("APA") as a whole to review the IRS's assessment of FBAR penalties against Plaintiff. Instead, the Court will first review *de novo* whether the four elements of liability under 31 U.S.C. § 5321(a)(5) for assertion of the willful FBAR penalties against Plaintiff have been met. *Jones v. United States*, 2020 WL 2803353, at *5 (C.D. Cal. May 11, 2020); *United States v. Pomerantz*, 2017 WL 2483213, at *4 (W.D. Wash. June 8, 2017); *United States v. McBride*, 908 F. Supp. 2d 1186, 1201 (D. Utah 2012). Then, unlike liability, the Court gives deference, in accordance with the APA, to the penalty amount chosen by the IRS. *Kimble v.*

*United States*, 991 F.3d 1238, 1243 (Fed. Cir. 2021); *Jones*, 2020 WL 2803353, at

*8. Under this standard, the Court will uphold the amount chosen by the IRS

unless it was "arbitrary, capricious, an abuse of discretion, or otherwise not in

accordance with law." 5 U.S.C. § 706(2)(A).

FIFTH DEFENSE

Should the Court ultimately determine that Plaintiff is entitled to a refund of

the partial willful FBAR penalty amounts he paid for the 2011, 2012 and/or 2013

years, the IRS may offset and apply any such amount against certain other

liabilities owed by Plaintiff to the United States.

SIXTH DEFENSE

The provisions of 26 U.S.C. § 6751 do not apply to the imposition of FBAR

penalties by the IRS because those penalties are imposed under Title 31, and not

Title 26, of the United States Code.

SEVENTH DEFENSE

There is no reasonable cause defense to the imposition of willful FBAR

penalties.

EIGHTH DEFENSE

Plaintiff and/or his duly authorized representatives signed valid "Consent to

Extend The Time To Assess Civil Penalties Provided By 31 U.S.C. § 5321 For

FBAR Violations" on multiple occasions cumulatively extending the time for the

- 4 -

IRS to assess FBAR penalties for the 2011, 2012, and 2013 years against Plaintiff to June 30, 2021.

NINTH DEFENSE

The United States hereby responds to the numbered allegations in Plaintiff's complaint. In response to the specific numbered paragraphs in the complaint, the United States admits, denies, and alleges as follows, and respectfully denies each and every allegation contained in the complaint that is not expressly admitted below. To the extent that the United States lacks knowledge sufficient to form a belief as to the truth of averments set forth in the complaint, such averments are denied. *See* Fed. R. Civ. P. 8(b).

1.     PLAINTIFF OSAMU KUROTAKI is a resident alien residing at all times mentioned herein in Honolulu, Hawaii.

**RESPONSE:** The United States admits that Plaintiff Osamu Kurotaki ("Plaintiff") is a U.S. permanent resident who resided in Honolulu, Hawaii, during at least 2011 through 2013 (collectively "the years at issue") and denies any remaining allegations contained in paragraph 1 of the complaint.

2.     DEFENDANT UNITED STATES OF AMERICA is a sovereign nation who has consented to be sued on the subject matter alleged in this Complaint.

**RESPONSE:** The United States admits that it is a sovereign nation with sovereign immunity against certain claims brought against it, that it has waived its sovereign immunity with respect to the claim for refund brought by Plaintiff in this complaint, that it is the only proper defendant in this action, and denies any remaining allegations contained in paragraph 2 of the complaint.

3.      DEFENDANT THE DEPARTMENT OF TREASURY is the administrative agency charged with administering the FBAR.  *See* 26 U.S.C. §§ 1474(f), 5314(a).

**RESPONSE:** The United States admits that pursuant to 31 U.S.C. § 5314, the Secretary of the Treasury is directed to require reports of certain transactions by United States persons with foreign financial agencies, that the implementing regulations, particularly 31 C.F.R. § 1010.350, require United States persons having a financial interest in, or signature or other such authority over, a bank, securities, or other financial account that is maintained in a foreign country to report such relationship to the IRS on a prescribed reporting form to provide any corresponding information as shall be specified by the Secretary of the Treasury, and that the Secretary of the Treasury prescribed Treasury Form TD F 90-22.1, Report of Foreign Bank and Financial Accounts ("FBAR"), as the reporting form to be filed by such persons during for the 2011 and 2012 calendar years and FinCEN Form 114, Report of Foreign Bank and Financial Accounts (FBAR), as

the reporting form during the 2013 calendar year. The United States further admits

that responsibility for the administration and enforcement of these provisions was

initially delegated to the Financial Crimes Enforcement Network ("FinCEN"), a

bureau of the Department of the Treasury, and that FinCEN subsequently

delegated to the IRS the authority to assess and collect civil penalties under 31

U.S.C. § 5321 for violations of the reporting and recordkeeping provisions of 31

U.S.C. § 5314. The United States avers that these recordkeeping requirements and

penalties for non-compliance are commonly referred to "FBARs" and "FBAR

penalties." The United States further avers that the Department of the Treasury is

not a proper party and that the only proper party is the United States. The United

States denies any remaining allegations contained in paragraph 3 of the complaint.

4.     DEFENDANT INTERNAL REVENUE SERVICE is an agency part

of the Department of Treasury and administers the FBAR. 26 U.S.C. §

7803(a)(l)(A); 31 C.F.R. § 103.56(g).

**RESPONSE:** The United States admits that the IRS is a bureau of the

Department of the Treasury that has been delegated the authority to administer and

enforce the statutory and regulatory provisions regarding the filing of FBARs

pursuant to 31 C.F.R. § 1010.810(g). The United States avers that the IRS is not a

proper party and that the only proper party is the United States. The United States

denies any remaining allegations contained in paragraph 4 of the complaint.

5.      Jurisdiction is conferred by 28 USC 1346(a)(2), known as the Little

Tucker Act, for recovery of amounts paid under $10,000 and by the Administrative

Procedures Act, 5 USC 701 et seq. to set aside DEFENDANT's final agency

decision, i.e., the IRS Appeals Decision, dated January 25, 2021, as arbitrary,

capricious and contrary to law.

**RESPONSE:** The United States admits that this Court has jurisdiction over

Plaintiff's claim under 28 U.S.C. § 1355 or 28 U.S.C. § 1346(a)(2); that 28 U.S.C.

§ 1346(a)(2) is commonly referred to as the Little Tucker Act; and that the final

agency action of the IRS was the assessment of the willful FBAR penalties at issue

which was based on the IRS Independent Office of Appeals decision explained in

its January 25, 2021 letter to Plaintiff. The United States denies any remaining

allegations contained in paragraph 5 of the complaint.

6.      Venue is appropriate in this Court pursuant to 28 USC 139l(c).

**RESPONSE:** The United States admits that venue is appropriate in this

Court pursuant to 28 U.S.C. § 1391 for Plaintiff's claim under 28 U.S.C. § 1355

and avers that venue is appropriate in this Court pursuant to 28 U.S.C. § 1402(a)(1)

for Plaintiff's claim under 28 U.S.C. § 1346(a)(2).

//

//

//

## PRELIMINARY STATEMENT

7.      31 USC 5314 authorizes the Secretary of the Treasury to require United States residents and citizens to report to the Internal Revenue Service certain transactions with certain foreign financial entities and individuals.

**RESPONSE:** The allegations contained in paragraph 7 of the complaint contain legal conclusions to which no response is required. To the extent a response is required, however, the United States avers that 31 U.S.C. § 5314 provides, in relevant part, that "the Secretary of the Treasury shall require a resident or citizen of the United States or a person in, and doing business in, the United States, to keep records, file reports, or keep records and file reports, when the resident, citizen, or person makes a transaction or maintains a relation for any person with a foreign financial agency" and that such reporting is done to the IRS through proper delegation. The United States denies any remaining allegations contained in paragraph 7 of the complaint.

8.      Under the implementing regulations of Section 5314, "[e]ach United States person having a financial interest in, or signature or other authority over, a bank, securities, or other financial account in a foreign country shall report such relationship to the Commissioner of Internal Revenue for each year in which such relationship exists[.]" 31 CFR 1010.350(a).

**RESPONSE:** The allegations contained in paragraph 8 of the complaint

contain legal conclusions to which no response is required. To the extent a

response is required, however, the United States admits that the quoted language

from a part of 31 C.F.R. § 1010.350(a) is correct and that 31 C.F.R. § 1010.350(a)

is part of the implementing regulations for 31 U.S.C. § 5314.

9.      The report must be filed with IRS on a Report of Foreign Bank and

Financial Account ("FBAR"). The FBAR is [sic] by June 30 "of each calendar

year with respect to foreign financial accounts exceeding $10,000 maintained

during the previous calendar year." 31 CFR 1010.306(c).

**RESPONSE:** With respect to the first sentence of paragraph 9 of the

complaint, the United States admits that the report described in 31 C.F.R. §

1010.350(a) is required to be made on an FBAR that is filed with the IRS. With

respect to the second sentence of paragraph 9 of the complaint, the United States

admits that the quoted language from a part of 31 C.F.R. § 1010.306(c) is correct

and avers that the FBAR filing deadline for filing years beginning in 2017 is April

15 and was June 30 for all prior filing years. *See*

https://www.fincen.gov/news/news-releases/new-due-date-fbars-0.

10.      On or about January 25, 2021, DEFENDANT through its agency the

Internal Revenue Service issued a final decision imposing excessive FBAR

penalties against PLAINTIFF in the aggregate amount of $11,645,935.20. This

amount relates to the years 2011, 2012 and 2013 and is composed of $3,129,464.63, $5,612,669.86 and $2,903,801.01, respectively. A copy of the IRS' final decision is attached hereto as Exhibit A.

**RESPONSE:** The United States admits that the IRS Independent Office of Appeals sent to Plaintiff and his duly authorized representative a letter dated January 25, 2021, informing them of the decision to reject Plaintiff's request to adjust the IRS's proposed assessment of FBAR penalties against him in the total amount of $10,645,936, consisting of the following amounts:

| Year | Amount |
|------|--------|
| 2011 | $2,129,465 |
| 2012 | $5,612,670 |
| 2013 | $2,903,801 |
| Total: | $10,645,936 |

The United States also admits that the first three pages of Exhibit A attached to the complaint appears to be a copy of the Internal Revenue Service Independent Office of Appeals' January 25, 2021 letter to Plaintiff and his duly authorized representative. The United States denies any remaining allegations contained in paragraph 10 of the complaint.

11.     On or about June 1, 2021, PLAINTIFF paid to IRS FBAR penalties of $3,000 for each of the years 2011, 2012 and 2013, for a total amount of $9,000.

**RESPONSE:** The United States admits the allegations contained in paragraph 11 of the complaint except for the payments date and instead avers that Plaintiff made the payments referenced in paragraph 11 on June 3, 2021.

12.     On or about June 25, 2021, PLAINTIFF timely filed claims for refund of all such FBAR penalty amounts paid.

**RESPONSE:** The United States admits the allegations contained in paragraph 12 of the complaint.

13.     DEFENDANT refused to act within the six month period after the claims for refund were submitted and therefore, such omission constitutes a denial of the claims for refund and entitles PLAINTIFF to institute this Complaint.

**RESPONSE:** The United States admits that the IRS has not acted on Plaintiff's administrative claims for refund referenced in paragraph 12 of the complaint to this date but denies the remaining allegations contained in paragraph 13 of the complaint.

## BACKGROUND

14.     Plaintiff was born in Japan on [sic] 1961. At all times relevant, Plaintiff has been a Japanese citizen. Plaintiff attended high school and a two-year program in design in Japan.

**RESPONSE:** With respect to the first sentence of paragraph 14 of the complaint, the United States admits that Plaintiff was born in Japan but avers that the date was January 15, 1965. The United States admits the allegations contained in the second sentence of paragraph 14 of the complaint. With respect to the third sentence of paragraph 14 of the complaint, the United States avers that not only did Plaintiff attend high school in Japan, but that he graduated high school in Japan and also attended a design school for two years in Japan from which he received a certificate.

15.     Plaintiff started a retail apparel business in Japan which was eventually incorporated as Ichioku, Co. Ltd. ("Ichioku"), which specializes in women's clothing. Ichioku owns Ichioku Thai Co., Ltd., a wholesale apparel business in Thailand, and JIH Company Limited, a wholesale apparel company in Hong Kong.

**RESPONSE:** The United States admits the allegations contained in the first sentence of paragraph 15 of the complaint. The United States is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in the second sentence of paragraph 15 of the complaint and therefore denies them.

16.     In 1996, Plaintiff established Iloque, Inc., a clothing manufacturer in Los Angeles, California. Iloque also operated two clothing stores in Hawaii which

Plaintiff has minimal involvement with. In 1997, Plaintiff obtained a permanent resident card ("green card").

**RESPONSE:** The United States admits the allegations contained in the first sentence of paragraph 16 of the complaint. With respect to the second sentence of paragraph 16 of the complaint, the United States admits that Iloque, Inc. operates two clothing stores in Hawaii but denies any remaining allegations in that sentence. The United States admits the allegations contained in the third sentence of paragraph 16 of the complaint.

17.    Through out [sic] the years at issue, Plaintiff's primary daily activity was managing Ichioku. Plaintiff and his family resided most of the time in Japan, frequently visiting Plaintiff's Hawaii home. Plaintiff has limited English-speaking ability.

**RESPONSE:** The United States is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in the first and third sentences of paragraph 17 of the complaint and therefore denies them. With respect to the second sentence of paragraph 17 of the complaint, the United States avers that Plaintiff stayed primarily in Japan but returned to Hawaii approximately one week per month to visit his wife and children and denies any remaining allegations in that sentence.

18.     Plaintiff's return preparer during the years in issue was Tomohiko Kokuso ("Kokuso").  Plaintiff understood that his filing obligation was to report the Japanese income in Japan and the U.S. income in the United States. Japan does not have a filing requirement similar to an FBAR. Plaintiff did not have detailed discussions with Kokuso concerning Plaintiff's U.S. filing obligations. As a result, Plaintiff was entirely unaware of Plaintiff's obligation to file an FBAR for any of the periods in issue.

**RESPONSE:** The United States admits the allegations contained in the first sentence of paragraph 18 of the complaint. The United States is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in the second, third, and fourth sentences of paragraph 18 of the complaint and therefore denies them. The United States denies the allegations contained in the fifth sentence of paragraph 18 of the complaint.

19.     Plaintiff was audited in Japan in 2013. During the course of this audit Plaintiff was informed about Plaintiff's U.S. filing obligations. As a result of this information, Plaintiff filed an FBAR for 2013 disclosing his personal bank accounts. Plaintiff later discovered an obligation to file an FBAR with respect to bank accounts of his Japanese companies and provided that information. In addition, Plaintiff controlled a household account under his wife's name. Plaintiff later discovered a possible FBAR filing requirement with respect to that household

account because of Plaintiff's control of the funds. Plaintiff then produced information for that small account.

**RESPONSE:** The United States admits the allegations contained in the first sentence of paragraph 19 of the complaint. The United States is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in the second sentence of paragraph 19 of the complaint and therefore denies them. With respect to the third sentence of paragraph 19 of the complaint, the United States admits that Plaintiff submitted an FBAR to the IRS for 2013 but avers that Plaintiff failed to disclose all the accounts that he was required by law to include and denies any remaining allegations contained in that sentence. With respect to the fourth sentence of paragraph 19 of the complaint, the United States admits that after Plaintiff submitted his 2013 FBAR to the IRS, he submitted an account summary identifying 30 additional foreign bank accounts for the 2013 reporting period that were not included on his submitted 2013 FBAR and denies any remaining allegations contained in that sentence. With respect to the fifth and sixth sentences of paragraph 19 of the complaint, the United States admits that Plaintiff had an FBAR filing requirement with respect to the account he controlled that was held in his wife's name but denies any remaining allegation contained in those sentences. With respect to the seventh sentence of paragraph 19 of the complaint, the United States admits that Plaintiff provided the IRS information with respect to

the account he controlled that was held in his wife's name but avers that such

information was provided late and denies any remaining allegations contained in

that sentence.

20.    Plaintiff was audited by IRS with respect to his U.S. filing obligations.

Even though the IRS Revenue Agent was aware of Plaintiff's company accounts,

the Agent originally indicated that FBAR filing was required only with respect to

the personal accounts. The Agent subsequently changed position and determined

that an FBAR obligation existed for more than 20 Japanese company accounts.

This determination ultimately formed the basis of the IRS assessment of the FBAR

Penalties.

**RESPONSE:** The United States admits the allegations contained in the first

sentence of paragraph 20 of the complaint. The United States denies the allegations

contained in the second, third, and fourth sentences of paragraph 20 of the

complaint.

## FIRST CAUSE OF ACTION (Claims for Refund)

21.    PLAINTIFF hereby incorporates each and every allegation heretofore

set forth in Paragraphs 1-20 of this Complaint as though fully stated herein.

**RESPONSE:** Because no allegations are made in paragraph 21 of the

complaint, no response is required. To the extent a response is required, the United

States realleges its responses to the paragraphs to which Plaintiff attempts to incorporate into paragraph 21 of the complaint.

22.     PLAINTIFF challenges each and every FBAR Penalty assessment as excessive and contrary to law and, in addition thereto, avers the following:

a.      the six (6) year statute of limitations afforded by 31 USC 532l(b)(l) expired before the assessment of the FBAR penalties;

**RESPONSE:** The United States denies the allegations contained in paragraph 22(a) of the complaint.

b.      the FBAR penalties were assessed without written managerial approval, as required by 26 USC 6751(b);

**RESPONSE:** The United States avers that 26 U.S.C. § 6751(b) does not apply to the IRS's FBAR penalty assessments against Plaintiff at issue in this action because FBAR penalties are authorized under Title 31 of the United States Code and 26 U.S.C. § 6751(b) applies only to penalty assessments authorized under Title 26 of the United States Code and denies any remaining allegations contained in paragraph 22(b) of the complaint.

c.      any failure to timely file or complete the FBARS herein was not willful;

**RESPONSE:** The United States denies the allegations contained in paragraph 22(c) of the complaint.

d.     PLAINTIFF is entitled to mitigation of FBAR penalties, as a matter of law;

**RESPONSE:** The United States denies the allegations contained in paragraph 22(d) of the complaint.

e.     FBAR penalties were computed erroneously; and

**RESPONSE:** The United States denies the allegations contained in paragraph 22(e) of the complaint.

f.     reasonable cause exists for any failure of PLAINTIFF to file or complete accurate FBARs.

**RESPONSE:** The United States avers that there is no reasonable cause defense to assessments of willful FBAR penalties and denies any remaining allegations contained in paragraph 22(f) of the complaint.

23.     Pursuant to 31 U.S.C. §532l(b)(l), IRS has six years after the FBAR due date to make an assessment of an FBAR penalty. The FBAR due dates for our years were as follows:

| Year | Due Date |
|------|----------|
| 2011 | 6/30/2012 |
| 2012 | 6/30/2013 |
| 2013 | 6/30/2014 |

**RESPONSE:** The United States admits the allegations contained in the first sentence of paragraph 23 of the complaint but also avers that the accountholder can agree to extend the six-year statute of limitations. The United States admits the allegations contained in the second sentence of, and chart contained in, paragraph 23 of the complaint

24.     The FBAR Penalties were assessed on January 25, 2021. That date is more than six years after the FBAR due date for assessment for the years 2011, 2012 and 2013. There was no valid waiver or consent extending the six-year period. As a result, all of the FBAR Penalties were assessed after the expiration of the period of limitations are unlawful. PLAINTIFF, therefore, is entitled to a refund of all amounts paid.

**RESPONSE:**  With respect to the first sentence of paragraph 24 of the complaint, the United States denies that the IRS assessed the willful FBAR penalties at issue against Plaintiff on January 25, 2021, and instead avers that the IRS assessed them on January 19, 2021. With respect to the second and third sentences of paragraph 24 of the complaint, the United States admits that the January 19, 2021 assessment was later than the general six-year statute of limitations due date for assessment of FBAR penalties for the 2011, 2012, and 2013 years, denies that there was not valid waivers and consents to extend those statutes of limitations, avers that there was several valid waivers and consents to

extend the applicable statute of limitations for the 2011, 2012, and 2013 years which cumulatively extended the assessment statute of limitations for all three years to June 30, 2021, and denies any remaining allegations contained in those two sentences. The United States denies the allegations contained in the fourth and fifth sentences of paragraph 24 of the complaint.

25.     The FBAR Penalties were assessed without managerial approval in writing. 26 U.S.C. §675 l(b) states in relevant part, "No penalty under this title shall be assessed unless the initial determination of such assessment is personally approved [sic] in writing by the immediate supervisor of the individual making such determination or such higher level official as the Secretary may designate." Both the Agent's Form 9984, Examining Officer's Activity Record, and the Agent's workpapers show that the Agent's group manager did not approve the assessment of the FBAR Penalties in writing as required by §675 l(b).

**RESPONSE:** The United States denies the allegations contained in the first sentence of paragraph 25 of the complaint. The United States admits that the quoted language in the second sentence of paragraph 25 of the complaint is accurate except "in writing" should be in parentheses but notes that the quoted language comes from subsection (b)(1) and not just section (b) of 26 U.S.C. § 6751. The United States denies the allegations contained in the third sentence of

paragraph 25 of the complaint and avers that 26 U.S.C. § 6751(b) does not apply to the assessment of FBAR penalties.

26.    IRS assessed penalties under 31 U.S.C. §5321(a)(5) for a willful failure to file a complete and accurate FBAR. The maximum penalty is the greater of $100,000 or 50% of the highest balance in an account during the course of the year to the extent the account was required to be reported. IRS based the FBAR Penalties on the 50% measure and limited to the total penalty that would have been due for the highest year (2012). This 2012 amount was then allocated among the three years for which the FBAR Penalties were proposed.

**RESPONSE:** With respect to the first sentence of paragraph 26 of the complaint, the United States admits that the IRS assessed penalties against Plaintiff under 31 U.S.C. § 5321(a)(5) for his willful failure to file complete and accurate FBARs reporting his financial interest in all his foreign financial accounts for the 2011, 2012, and 2013 years and denies any remaining allegations contained in that sentence. With respect to the second sentence of paragraph 26 of the complaint, the allegations contain legal conclusions to which no response is required. To the extent a response is required, the United States admits that the statutory maximum willful FBAR penalty under 31 U.S.C. § 5321(a)(5) is the greater of $100,000 or 50% of the balance in the account at the time of the violation with the violation being the failure to report the existence of the account and denies any remaining

allegation contained in that sentence. With respect to the third and fourth sentences of paragraph 26 of the complaint, the United States admits that the IRS computed the willful FBAR penalties at issue here against Plaintiff under IRM 4.26.16.5.5.3(4)(a) by first determining the statutory maximum penalty for the three years at issue, then limiting the overall penalty for all three years to 50 percent of the highest aggregate balance of all unreported foreign financial accounts during the three years which here was during the 2012 year, and finally allocating that 2012 highest aggregate balance to each of the three years at issue based upon the ratio of the highest aggregate balance for each year to the total of the highest aggregate balance for all years combined. The United States denies any remaining allegations contained in the third and fourth sentences of paragraph 26 of the complaint.

27.     The FBAR Penalties are only appropriate if Plaintiff's failure to file timely and complete FBARs was willful. The classic definition of willfulness is "a voluntary, intentional violation of as known legal duty." United States v. Pomponio, 429 U.S. 10, 12 (1976); Cheek v. United States, 498 U.S. 192 (1991). The lowest standard applied by the tax law to the definition of willfulness requires a voluntary, conscious and intentional act. See Klotz v. United States, 602 F.2d 900 (9th Cir. 1979). Accordingly, willfulness cannot be based on anything for which the Plaintiff lacked knowledge.

**RESPONSE:** The allegations contained in paragraph 27 of the complaint are legal conclusions to which no response is required. To the extent a response is required, the United States admits that the FBAR penalties at issue against Plaintiff were assessed as willful FBAR penalties and that a finding of willfulness will be necessary to uphold those assessments but denies any remaining allegations contained in the first sentence of paragraph 27 of the complaint. The United States admits that the quoted language is correctly quoted from the cases cited but denies that it is the only definition of willfulness applicable in this action and denies any remaining allegation contained in the second sentence of paragraph 27 of the complaint. The United States denies the allegations contained in the third and fourth sentences contained in paragraph 27 of the complaint.

28.     Plaintiff had no actual knowledge of the FBAR filing requirement. With no "known legal duty" petitioner could not have acted willfully. With no knowledge of the FBAR filing requirement, Plaintiff could not have made "a voluntary, conscious and intentional act" in failing to file.

**RESPONSE:** The United States is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in the first sentence of paragraph 28 of the complaint and therefore denies them. The United States denies the allegations contained in the second and third sentences of paragraph 28 of the complaint.

29.     Plaintiff also did not have reckless disregard of the FBAR filing requirements. Plaintiff was unfamiliar with US filing obligations in general and exercised reasonable diligence in hiring Kokuso to provide advice.  Plaintiff was not reckless in any respect.

**RESPONSE:** The United States denies the allegations contained in paragraph 29 of the complaint.

30.     IRS made no determination that Plaintiff had knowledge of the FBAR reporting requirement. Plaintiff had no accounting or tax education or training and there is no evidence that Plaintiff read or understood the lengthy correspondence provided by Kokuso. In addition, IRS interviewed Kokuso who disavowed any specific discussions with Plaintiff concerning Plaintiff's U.S. filing obligations. IRS has the burden of proof to establish willfulness. There is no evidence supporting a determination of willfulness in Plaintiff's case.

**RESPONSE:** The United States denies the allegations contained in the first sentence of paragraph 30 of the complaint. The United States is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in the second sentence of paragraph 30 of the complaint and therefore denies them. The United States admits that the IRS interviewed Tomohiko Kokuso as part of its examination but denies any remaining allegations contained in the third sentence of paragraph 30 of the complaint. The allegations contained in the fourth sentence of

paragraph 30 of the complaint contain legal conclusions to which no response is required. To the extent a response is required, the United States avers that Plaintiff has the burden of proving that he is entitled to the refund he seeks and denies any remaining allegations contained in the fourth sentence of paragraph 30 of the complaint. The United States denies the allegations contained in the fifth sentence of paragraph 30 of the complaint.

31.     The FBAR penalty regime gives the Secretary discretion to impose a penalty ranging from zero up to the maximum amount of the applicable penalty, and IRS has adopted guidelines to promote consistency by IRS employees in exercising this discretion. See Internal Revenue Manual ("IRM") 4.26.16.6.6. For violations occurring after October 22, 2004, those mitigation guidelines are set forth in IRM Exhibit 4.26.16-1. The mitigation guidelines apply if the Plaintiff satisfies four threshold criteria. Those prerequisites include (1) no past history of FBAR penalties; (2) no illegal source for the amounts deposited to the foreign account; (3) cooperation during the examination and filing of delinquent FBARs; and (4) no civil fraud determination on a related income tax audit.

**RESPONSE:** With respect to the first sentence of paragraph 31 of the complaint, the United States admits that 31 U.S.C. § 5321 gives the Secretary of the Treasury discretion to impose a civil penalty up to a maximum amount and that the IRS has provided some guidance in its Internal Revenue Manual for mitigation

to promote consistency by IRS employees in exercising their discretion for similarly situated persons and denies any remaining allegations contained in that sentence. The United States admits the allegations contained in the second sentence of paragraph 31 of the complaint except avers that the guidelines are found at IRM Exhibit 4.26.16-2 in the current version of the IRM. The United States admits the allegations contained in the third sentence of paragraph 31 of the complaint but further avers that under IRM 4.26.16.5.2.1, the examining IRS employee has discretion to apply a different penalty amount than that calculated under the mitigation guidelines if the examiner believes the facts and circumstances of the case warrant a different penalty amount. With respect to the fourth sentence of paragraph 31 of the complaint, the United States admits that the mitigation criteria are: (1) the person has no history of criminal tax or Bank Secrecy Act convictions for the preceding 10 years, as well as no history of past FBAR penalty assessments; (2) no money passing through any of the foreign accounts associated with the person was from an illegal source or used to further a criminal purpose; (3) the person cooperated during the examination (i.e., IRS did not have to resort to a summons to obtain non-privileged information; the taxpayer responded to reasonable requests for documents, meetings, and interviews (the taxpayer back-filled correct reports)); and (4) the IRS did not sustain a civil fraud penalty against the person for an underpayment for the year in question due to the

failure to report income related to any amount in a foreign account and denies any remaining allegations contained in that sentence.

32.     Plaintiff meets all four criteria for mitigation:

a.     Plaintiff has not had a history of past FBAR penalty assessments.

**RESPONSE:** The United States admits the allegations contained in paragraph 32(a) of the complaint.

b.     The money passing through the foreign accounts was not from an illegal source.

**RESPONSE:** The United States is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 32(b) of the complaint and therefore denies them.

c.     Plaintiff responded to more than 25 information document requests in addition to additional requests for information by email and phone calls.  Plaintiff voluntarily agreed to two interviews, one where he was required to fly to the United States.  Plaintiff filed all delinquent FBARs for all bank accounts during the examination.

**RESPONSE:** The United States admits that as part of income tax, fraud penalty, and FBAR penalty examinations, cumulatively, Plaintiff responded to approximately 25 information document requests and follow-up phone calls but

denies any remaining allegations contained in the first sentence of paragraph 32(c) of the complaint. The United States admits that Plaintiff voluntarily agreed first to a telephone interview, avers that the second interview was not voluntary as the IRS issued a summons to Plaintiff for that interview and the interview was held in Los Angeles for the convenience of Plaintiff, and denies any remaining allegations contained in the second sentence of paragraph 32(c) of the complaint. The United States admits that Plaintiff filed delinquent FBARs for the 2011 and 2012 years, and a timely FBAR for the 2013 year, during the IRS examination, avers that the filed FBARs did not disclose all accounts required to be reported on the FBARs, and denies any remaining allegations contained in the third sentence of paragraph 32(c) of the complaint. The United States further avers that Plaintiff did not meet the third criteria for mitigation because he did not cooperate during the IRS examination.

       d.     IRS did not make a final determination of civil fraud against Plaintiff regarding the omitted foreign income attributed to the FBAR accounts.

**RESPONSE:** The United States denies the allegations contained in paragraph 32(d) of the complaint.

       e.     Plaintiff has met all of the mitigation guidelines as set forth in the IRM and mitigation of the FBAR Penalties is required.

**RESPONSE:** The United States denies the allegations contained in paragraph 32(e) of the complaint.

33.    IRS assessed the penalty based on 50% of the highest account balance in the personal and company accounts for which Plaintiff had signature authority. The personal account balances were a di minimus portion of this liability. Even including the household account controlled by Plaintiff but held in his wife's name, the proportion of the personal accounts of the total amount determined by IRS is only 3.3% in 2011, 10.9% in 2012 and 5.2% in 2013. In addition, when Plaintiff was finally advised of his U.S. filing obligations in the course of the Japanese audit, Plaintiff actually filed and reported the primary personal account for 2013.

**RESPONSE:** With respect to the first sentence of paragraph 33 of the compliant, the United States admits that the FBAR penalty at issue against Plaintiff is based on 50% of the highest aggregate balance for all the foreign accounts which Plaintiff was required to report but failed to do so for the 2012 year and then that amount is apportioned among the three years at issue and denies any remaining allegations contained in that sentence. The United States admits that the amounts attributable to accounts solely in the name of Plaintiff and his wife were significantly smaller than the amounts attributable to accounts held in the names of Plaintiff's companies and denies any remaining allegations contained in the second sentence of paragraph 33 of the complaint. The United States is without knowledge

or information sufficient to form a belief as to the truth of the allegations contained in the third and fourth sentences of paragraph 33 of the complaint and therefore denies them.

34.     The IRS computation of the FBAR Penalty amounts is based almost entirely on the determination of the Japanese company account balances. These company account balances include companies held directly by Plaintiff and subsidiaries of those companies. As a matter of law, it is legally incorrect to assert an FBAR obligation with respect to these Japanese company balances. As a result, the FBAR Penalties are grossly overstated based on this technical error.

**RESPONSE:** The United States admits that the account balances for accounts held in the name of a company or companies for which Plaintiff was required to report but failed to do so comprise a vast majority of the FBAR penalty amount the IRS assessed against Plaintiff at issue in this action but denies any remaining allegations contained in the first sentence of paragraph 34 of the complaint. The United States is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in the second sentence of paragraph 34 of the complaint and therefore denies them. The United States denies the allegations contained in the third and fourth sentences of paragraph 34 of the complaint.

35.     In addition, pursuant to IRM 4.26.16.6.5, IRS is required to compute

the penalty on the June 30th account balance. Instead, IRS used the highest account

balance to compute the penalty. Therefore, the FBAR Penalties were improperly

assessed in incorrect amounts.

**RESPONSE:** The United States admits that IRM provides, but does not

require, an IRS employee to first compute a willful FBAR penalty amount on a

June 30 balance, avers that the Internal Revenue Manual also provides an IRS

employee to then compute a willful penalty amount by determining the highest

aggregate balance of all accounts at issue for multiple years and then apportioning

that highest aggregate balance proportionally to the years at issue, and denies any

remaining allegations contained in the first sentence of paragraph 35 of the

complaint. The United States admits that the IRS computed the willful FBAR

penalties at issue here against Plaintiff under IRM 4.26.16.5.5.3(4)(a) by first

determining the statutory maximum penalty for the three years at issue, then

limiting the overall penalty for all three years to 50 percent of the highest

aggregate balance of all unreported foreign financial accounts during the three

years which here was during the 2012 year, and finally allocating that 2012 highest

aggregate balance to each of the three years at issue based upon the ratio of the

highest aggregate balance for each year to the total of the highest aggregate

balance for all years combined, avers that this amount was less than the statutory

maximum, and denies any remaining allegations contained in the second sentence of paragraph 35 of the complaint. The United States denies the allegations contained in the third sentence of paragraph 35 of the complaint.

36.     Plaintiff has reasonable cause which requires waiver of all FBAR Penalty amounts. Plaintiff relied on Kokuso to satisfy Plaintiffs U.S. filing obligations. Kokuso had been Plaintiffs return preparer for many years prior to the years in issue. Kokuso was very well aware of Plaintiff's foreign business activities and foreign companies. Kokuso was also aware that Plaintiff lived most of the time in Japan with his family. Kokuso had adequate knowledge to determine the extent of Plaintiffs U.S. filing obligations.

**RESPONSE:** The United States denies the allegations contained in the first sentence of paragraph 36 of the complaint and avers that there is no reasonable cause defense to the assessment of willful FBAR penalties. The United States is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in the second, third, fourth, fifth, and sixth sentences of paragraph 36 of the complaint and therefore denies them.

37.     Even though Kokuso had sufficient knowledge to properly advise Plaintiff of his U.S. filing obligations, Kokuso did not have detailed conversations or explain the extent of Plaintiff's obligations. As a trusted advisor who had knowledge of Plaintiff's foreign activities, Plaintiff was entitled to rely on Kokuso

to properly advise him concerning Plaintiff's U.S. filing obligations. Plaintiff had

minimal education, none of which was in the United States. The U.S. filing

obligations of a green card holder are very obscure and require a high degree of

understanding and sophistication. Reliance on a professional advisor is the only

way a person in Plaintiff's position could reasonably be expected to comply. Under

these circumstances, reliance on a trusted professional advisor constitutes

reasonable cause justifying the waiver of the FBAR Penalties.

**RESPONSE:** The United States is without knowledge or information

sufficient to form a belief as to the truth of the allegations contained in the first and

third sentences of paragraph 37 of the complaint and therefore denies them. The

United States denies the allegations contained in the second, fourth, fifth, and sixth

sentences of paragraph 37 of the complaint. The United States further avers that

there is no reasonable cause defense to the assessment of willful FBAR penalties.

38.    The reasonable cause case is particularly strong for the FBAR

Penalties assessed on the company accounts. Well over 90% of the FBAR

Penalties were assessed for the Ichioku accounts and the accounts of the Ichioku

subsidiaries. Kokuso was unaware the FBAR requirements extended to company

accounts in these circumstances and advised Plaintiff incorrectly on his FBAR

filing obligation for those accounts. The proof of reasonable cause is compelling

for the company accounts.

**RESPONSE:** The United States denies the allegations contained in the first, third, and fourth sentences of paragraph 38 of the complaint and avers that there is no reasonable cause defense to the assessment of willful FBAR penalties. The United States admits that accounts held in the name of a company or companies for which Plaintiff was required to report but failed to do so comprise a vast majority of the FBAR penalty amount the IRS assessed against Plaintiff at issue in this action and denies any remaining allegations contained in the second sentence of paragraph 38 of the complaint.

## SECOND CAUSE OF ACTION (APA Violations)

39.     PLAINTIFF hereby incorporates by reference each and every averment heretofore stated in Paragraphs 1 - 38 of this Complaint as though fully stated herein.

**RESPONSE:** Because no allegations are made in paragraph 39 of the complaint, no response is required. To the extent a response is required, the United States realleges its responses to the paragraphs to which Plaintiff attempts to incorporate into paragraph 39 of the complaint.

40.     By reason thereof, the IRS' final decision of January 25, 2021 was contrary to its own rules and regulations and must be set aside pursuant to 5 U.S.C. 701 et seq. as arbitrary and capricious.

**RESPONSE:** The United States denies the allegations contained in paragraph 40 of the complaint and avers that the Court will first review *de novo* whether the four elements of liability under 31 U.S.C. § 5321(a)(5) for assertion of the willful FBAR penalties against Plaintiff have been met and then, unlike liability, the Court gives deference, in accordance with the APA, to the penalty amount chosen by the IRS and will uphold the amount chosen by the IRS unless it was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."

## UNITED STATES' COUNTERCLAIM

The United States of America brings this counterclaim to collect unpaid federal civil penalty assessments and interest and other statutory accruals as provided by law, and to reduce those assessments to judgment. Additionally, the United States intends to proceed under the Federal Debt Collection Practices Act (28 U.S.C. § 3001 et seq.) to collect any judgment it obtains in this case, including the use of all appropriate pre-judgment remedies, post-judgment remedies, and the additional surcharge as authorized by 28 U.S.C. § 3011. In support of this counterclaim, the United States complains and alleges as follows:

## INTRODUCTION

1.      This is a timely counterclaim brought by the United States to collect the outstanding unpaid civil penalty assessments (31 U.S.C. § 5321(a)(5)),

commonly known as FBAR penalties, made against counterclaim defendant

Osamu Kurotaki for his failure to report his interest in foreign bank accounts, as

required by 31 U.S.C. § 5314 and the implementing regulations promulgated

thereunder.

2.      This action is brought with the authorization of the Secretary of the

Treasury (*see* 31 U.S.C. § 3711(g)(4)(C)) and at the direction of the Attorney

General of the United States.

## COUNTERCLAIM DEFENDANT

3.      Counterclaim Defendant Osamu Kurotaki ("Kurotaki") is a Japanese

citizen and a United States permanent resident. Kurotaki resides in Honolulu,

Hawaii.

## JURISDICTION AND VENUE

4.      Jurisdiction over this counterclaim is conferred upon this district court

by 28 U.S.C. §§ 1331, 1345 and 1355. This counterclaim is procedurally proper

under Fed. R. Civ. P. 13.

5.      Venue properly lies in the District of Hawaii under 28 U.S.C. §

1391(b)(1) because Kurotaki resides within the judicial district.

## REQUIREMENT TO FILE FBARs

6.      31 U.S.C. § 5314 authorizes the Secretary of the Treasury to require

United States persons to report certain transactions with foreign financial agencies.

Under the statute's implementing regulations, "[e]ach United States person having a financial interest in, or signature authority over, a bank, securities, or other financial account in a foreign country shall report such relationship" to the Internal Revenue Service ("IRS") for each year in which such relationship exists. 31 C.F.R. § 1010.350(a).

7.      To fulfill the requirement of 31 U.S.C. § 5314 during the 2011 and 2012 calendar years, a person must file a Form TD F 90-22.1, "Report of Foreign Bank and Financial Accounts," commonly known as an "FBAR." For these calendar years, an FBAR was due by June 30 "of each calendar year with respect to foreign financial accounts exceeding $10,000 maintained during the previous calendar year." 31 C.F.R. § 1010.306(c).

8.      To fulfill the requirement of 31 U.S.C. § 5314 during the 2013 calendar year, a person must file a FinCEN Form 114. For that calendar year, a FinCEN Form 114, also commonly known as an "FBAR," was due by June 30 following the calendar year reported for all foreign financial accounts exceeding $10,000. 31 C.F.R. § 1010.306(c).

9.      31 U.S.C. § 5321(a)(5) provides for the imposition of civil penalties for failure to comply with the reporting requirements of 31 U.S.C. § 5314.

10.    Kurotaki had a financial interest in 42 foreign bank accounts in 2011;

36 foreign bank accounts in 2012; and 32 foreign bank accounts in 2013 as

follows:

| **2011** | | |
|---|---|---|
| **Name on account** | **Bank/Institution** | **Last four digits of account number** |
| Kurotaki | Bank of Tokyo | 0130 |
| Ichioku | Mizuho Bank | 8031 |
| Ichioku | Mizuho Bank | 3410 |
| Ichioku | Mizuho Bank | 7061 |
| Ichioku | Mizuho Bank | 4675 |
| Ichioku | Mizuho Bank | 2368 |
| Ichioku | Mizuho Bank | 2260 |
| Ichioku | Mizuho Bank | 0957 |
| Ichioku | Mizuho Bank | 0998 |
| Ichioku | Mizuho Bank | 2015 |
| Ichioku | Mizuho Bank | 8786 |
| Ichioku | Mizuho Bank | 2842 |
| Ichioku | Resona Bank | 6089 |

| Ichioku | Resona Bank | 9100 |
|---------|-------------|------|
| Ichioku | Resona Bank | 9254 |
| Ichioku | Japan Net Bank | 6525 |
| Ichioku | Tokyo Tomin Bank | 2193 |
| Ichioku | Tokyo Tomin Bank | 6644 |
| Ichioku | Japan Post Bank | 2401 |
| Ichioku | Sumitomo Mitsui Bank | 9606 |
| Ichioku | Sumitomo Mitsui Bank | 6206 |
| Ichioku | Sumitomo Mitsui Bank | 6206 |
| Ichioku | Bank of Tokyo | 7825 |
| Ichioku | Bank of Tokyo | 9000 |
| Ichioku | Bank of Tokyo | 0736 |
| Ichioku | Bank of Tokyo | 0592 |
| Ichioku | Bank of Tokyo | 2128 |
| Ichioku | Bank of Tokyo | 4988 |
| Ichioku | Bank of Tokyo | 2842 |
| Ichioku | Bank of Tokyo | 1299 |
| Ichioku | Bank of Tokyo | 2669 |
| Ichioku | Bank of Tokyo | 2198 |

| | | |
|---|---|---|
| Ichioku | Bank of Tokyo | 4821 |
| Ichioku | Shoko Chukin Bank | --- |
| Ichioku | Shoko Chukin Bank | 3318 |
| Ichioku | Shoko Chukin Bank | 3374 |
| MV | Mizuho Bank | 9946 |
| MV | Bank of Tokyo | 6509 |
| MV | Shoko Chukin Bank | 1181 |
| Ichioku Thai | Mizuho Bank | 6031 |
| I JIH | Hang Seng Bank | 4001 |
| Lee | Bank of Tokyo | 9729 |

| 2012 | | |
|---|---|---|
| **Name on account** | **Bank/Institution** | **Last four digits of account number** |
| Kurotaki | Bank of Tokyo | 0130 |
| Ichioku | Joyo Bank | 3437 |
| Ichioku | Mizuho Bank | 8031 |
| Ichioku | Resona Bank | 9100 |
| Ichioku | Resona Bank | 9254 |

| | | |
|---|---|---|
| Ichioku | Japan Net Bank | 6525 |
| Ichioku | Tokyo Tomin Bank | 2193 |
| Ichioku | Tokyo Tomin Bank | 6644 |
| Ichioku | Japan Post Bank | 2401 |
| Ichioku | Sumitomo Mitsui Bank | 9606 |
| Ichioku | Sumitomo Mitsui Bank | 1402 |
| Ichioku | Sumitomo Mitsui Bank | 1399 |
| Ichioku | Sumitomo Mitsui Bank | 6206 |
| Ichioku | Sumitomo Mitsui Bank | 6206 |
| Ichioku | Sumitomo Mitsui Bank | 2673 |
| Ichioku | Bank of Tokyo | 7825 |
| Ichioku | Bank of Tokyo | 9000 |
| Ichioku | Bank of Tokyo | 0736 |
| Ichioku | Bank of Tokyo | 0592 |
| Ichioku | Bank of Tokyo | 2128 |
| Ichioku | Bank of Tokyo | 4988 |
| Ichioku | Bank of Tokyo | 2842 |
| Ichioku | Bank of Tokyo | 1299 |
| Ichioku | Bank of Tokyo | 2669 |

| Ichioku | Bank of Tokyo | 2198 |
|---|---|---|
| Ichioku | Shoko Chukin Bank | 3318 |
| Ichioku | Shoko Chukin Bank | 3374 |
| Ichioku | Shoko Chukin Bank | --- |
| Ichioku | Shoko Chukin Bank | --- |
| Ichioku | Higashi Nippon Bank | 4008 |
| MV | Mizuho Bank | 9946 |
| MV | Bank of Tokyo | 6509 |
| MV | Shoko Chukin Bank | 1181 |
| Ichioku Thai | Mizuho Bank | 6031 |
| I JIH | Hang Seng Bank | 4001 |
| Lee | Bank of Tokyo | 9729 |

| 2013 | | |
|---|---|---|
| **Name on account** | **Bank/Institution** | **Last four digits of account number** |
| Ichioku | Mizuho Bank | 8031 |
| Ichioku | Resona Bank | 9100 |
| Ichioku | Resona Bank | 9254 |

| Ichioku | Japan Net Bank | 6525 |
|---------|----------------|------|
| Ichioku | Tokyo Tomin Bank | 2193 |
| Ichioku | Tokyo Tomin Bank | 6644 |
| Ichioku | Japan Post Bank | 2401 |
| Ichioku | Sumitomo Mitsui Bank | 9606 |
| Ichioku | Sumitomo Mitsui Bank | 1402 |
| Ichioku | Sumitomo Mitsui Bank | 1399 |
| Ichioku | Sumitomo Mitsui Bank | 6206 |
| Ichioku | Sumitomo Mitsui Bank | 6206 |
| Ichioku | Sumitomo Mitsui Bank | 2673 |
| Ichioku | Bank of Tokyo | 7825 |
| Ichioku | Bank of Tokyo | 9000 |
| Ichioku | Bank of Tokyo | 0592 |
| Ichioku | Bank of Tokyo | 2128 |
| Ichioku | Bank of Tokyo | 4988 |
| Ichioku | Bank of Tokyo | 2842 |
| Ichioku | Bank of Tokyo | 1299 |
| Ichioku | Bank of Tokyo | 2669 |
| Ichioku | Shoko Chukin Bank | 3318 |

| Ichioku | Shoko Chukin Bank | 3374 |
|---------|-------------------|------|
| Ichioku | Shoko Chukin Bank | --- |
| Ichioku | Shoko Chukin Bank | --- |
| Ichioku | Higashi Nippon Bank | 4008 |
| MV | Mizuho Bank | 9946 |
| MV | Bank of Tokyo | 6509 |
| MV | Shoko Chukin Bank | 1181 |
| Ichioku Thai | Mizuho Bank | 6031 |
| I JIH | Hang Seng Bank | 4001 |
| Lee | Bank of Tokyo | 9729 |

11.     Kurotaki was required by law to file FBARs reporting his financial interest in each of the accounts referenced in paragraph 10, above, as well as any other year that satisfied the FBAR reporting requirements.

12.     Kurotaki did not timely file FBARs that disclosed all the accounts referenced in paragraph 10, above, for the years 2011 through 2013.

## WILLFUL FAILURE TO FILE FBARs

13.     Kurotaki is a United States permanent resident. He graduated high school and attended a two-year design school in Japan from which he obtained a certificate of completion.

14.     After obtaining his design school certificate, Kurotaki started his own apparel retail business in Japan. About four years later, Kurotaki incorporated the business as Ichioku, Co., Ltd. ("Ichioku"), a women's apparel company, which has continued through the present. Kurotaki has always been the CEO, owner, and sole shareholder of Ichioku.

15.     In 1996, Kurotaki and his wife, Hyo Sook Lee ("Lee"), immigrated to the United States. At the same time, Kurotaki established a new C corporation in Los Angeles, California, called Iloque, Inc. ("Iloque"). Kurotaki has always been the owner and sole shareholder of Iloque. In addition to exporting clothing to Japan to sell through Ichioku, Iloque operates two clothing stores in Hawaii.

16.     Additionally, during at least 2011 through 2013, Kurotaki had an ownership and financial interest in: (a) MV Limited Co., a real estate company in Japan; (b) Ichioku Thai Co. Ltd, a wholesale apparel company in Thailand; and (c) I JIH Company Limited, a Hong Kong wholesale apparel company. Kurotaki was thus simultaneously overseeing businesses in the United States, Japan, Thailand, and Hong Kong.

17.     In approximately 2014, the Japanese Tax Authority provided information to the IRS that Kurotaki had received income in Japan that had not been reported on his U.S. Individual Income Tax Returns (Form 1040) for the 2008 through 2012 tax years.

- 46 -

18.     Based on the information provided to it by the Japanese Tax Authority, the IRS opened an examination regarding Kurotaki's Forms 1040. That examination was later expanded to include Kurotaki's failure to file FBARs.

19.     Prior to the examinations described in paragraph 18, above, Kurotaki had failed to report any significant income from his foreign businesses on his Forms 1040 and had never filed an FBAR.

20.     Kurotaki hired Tomohiko Kokuso ("Kokuso") to prepare his Forms 1040. Kokuso has been doing so since at least 2007.

21.     Kokuso's customary practice was to provide a Tax Return Questionnaire each year to his clients before preparing their Form 1040. Prior to preparing Kurotaki's Forms 1040, Kokuso provided the Tax Return Questionnaire to Kurotaki in Japanese and not in English.

22.     The first page of the Tax Return Questionnaire Kukuso provided to Kurotaki included a note apprising Kurotaki of a penalty for not reporting foreign bank and financial accounts at the bottom of the page above the place where Kurotaki signed and dated indicating that he believed all the information that he provided was true and correct.

23.     The second page of the Tax Return Questionnaire Kukuso provided to Kurotaki was titled "FBAR Client Letter." The "FBAR Client Letter" informed Kurotaki that he had to report his worldwide income from both United States and

foreign sources as well as his duty to report "an interest in or signature or other authority over a financial account in a foreign country, such as a bank account, securities account, or other financial account . . . . [on] Form TD F 90-22.1, Report of Foreign Bank and Financial Accounts (FBAR), if the aggregate value of all such accounts exceeds $10,000 at any time during the calendar year."

24.     The Tax Return Questionnaire also informed Kurotaki that the FBAR is not filed with his tax return, that it was filed with the Department of the Treasury in Detroit, Michigan, and that it was due no later than June 30 of the year following the calendar year reported. It further warned Kurotaki that failure to report income in foreign bank accounts, or file the FBAR, could result in "serious consequences including large monetary penalties."

25.     Finally, the Tax Return Questionnaire informed Kurotaki that if he had any questions about foreign accounts and whether he had to file an FBAR, Kukuso would be happy to review Kurotaki's portfolio and provide further advise about the requirements. Kurotaki did not follow up with Kukuso regarding his FBAR filing requirements nor did he seek any other professional advice regarding those obligations.

26.     Kurotaki signed and returned the Tax Return Questionnaire to Kokuso but failed to return the last page which addressed foreign accounts. Kurotaki did not otherwise inform Kukuso of his foreign bank accounts.

27.     On his originally filed Forms 1040 for the 2007 through 2010 tax years, Kurotaki checked "no" on Schedule B in response to the question asking whether he had any interest in foreign financial accounts.

28.     On his filed Form 1040 for the 2011 tax year, Kurotaki failed to answer the question on Schedule B regarding any interest in foreign financial accounts.

29.     With respect to his filed Form 1040 for the 2012 tax year, Kurotaki did not file a Schedule B with his return.

30.     On his filed Form 1040 for the 2013 tax year, Kurotaki checked "yes" on Schedule B in response to the question asking whether he had any interest in foreign financial accounts.

31.     At the conclusion of the IRS's income tax examination regarding Kurotaki, the IRS determined that Kurotaki had failed to report income from his foreign businesses as follows:

- $1,669,234 in 2008;

- $2,020,685 in 2009;

- $2,469,704 in 2010;

- $2,961,678 in 2011; and

- $2,512,870 in 2012.

32.     During the IRS's income tax examination regarding Kurotaki, Kurotaki submitted delinquent FBARs for 2011 and 2012.

33.     On January 7, 2016, Kurotaki submitted his delinquent 2011 FBAR disclosing 31 foreign bank accounts. However, on March 23, 2017, Kurotaki submitted an account summary to the IRS identifying 41 foreign bank accounts for 2011.

34.     On September 15, 2015, Kurotaki submitted his delinquent 2012 FBAR disclosing just one foreign bank account. On January 7, 2016, Kurotaki filed an amended FBAR for 2012 disclosing a total of 29 foreign bank accounts but did not include account values. However, on March 23, 2017, Kurotaki submitted an account summary to the IRS identifying 35 foreign bank accounts for 2012.

35.     On June 16, 2014, Kurotaki submitted a timely FBAR for 2013 but again he only reported one foreign bank account. Later, Kurotaki submitted an account summary to the IRS identifying 30 additional foreign bank accounts for 2013.

36.     Despite being repeatedly asked for all his foreign accounts as part of the IRS's examination, on or about February 9, 2018, Kurotaki disclosed to the IRS an additional foreign bank account that was not previously disclosed on any of his FBAR filings.

- 50 -

37.     This additional account was opened in Lee's name using her passport and personal seal by an employee of Kurotaki's MV Limited Co. and was used by MV Limited Co. in the conduct of its business. Lee was unaware of, and did not use, this account. This account was open during at least the 2001 through 2013 years.

## CLAIM FOR RELIEF: JUDGMENT FOR CIVIL PENALTIES (31 U.S.C. § 5321(a)(5))

*Liability for the Civil Penalty*

38.     During the calendar years 2011, 2012, and 2013, Kurotaki was a United States person within the meaning of 31 C.F.R. § 1010.350(b).

39.     During the calendar years 2011, 2012, and 2013, Kurotaki had a financial interest in, or signatory or other authority over, within the meaning of 31 C.F.R. §§ 1010.350(e) or (f), the foreign accounts listed in paragraph 10, above ("the Accounts").

40.     The Accounts were bank accounts in a foreign country.

41.     During the calendar years 2011, 2012, and 2013, the balance in the Accounts exceeded $10,000.

42.     Kurotaki did not file timely or accurate FBARs for the 2011 and 2012 calendar years to report his financial interest in the Accounts for these years in violation of 31 U.S.C. § 5314 and 31 C.F.R. § 1010.306(c).

43.    Kurotaki filed a timely, but inaccurate, FBAR for the 2013 calendar year to report his financial interest in the Accounts for this year in violation of 31 U.S.C. § 5314 and 31 C.F.R. § 1010.306(c).

44.    The failure of Kurotaki to file timely and accurate FBARs with regard to the 2011, 2012, and 2013 calendar years was willful within the meaning of 31 U.S.C. § 5321(a)(5).

***Assessment and Collection of the Civil Penalty***

45.    On or about January 19, 2021, a delegate of the Secretary of the Treasury timely assessed civil penalties against Counterclaim Defendant Osamu Kurotaki in the total amount of $10,645,936, due to the willful failure of Kurotaki to timely file accurate FBARs to disclose the Accounts to the IRS for the calendar years 2011, 2012, and 2013 ("FBAR Penalties").

46.    A delegate of the Secretary of Treasury sent a notice of the assessments and demand for payment to Kurotaki for the FBAR Penalties at Kurotaki's last known address.

47.    In addition to the FBAR Penalties, Defendant owes late-payment penalties pursuant to 31 U.S.C. § 3717(e)(2), and interest pursuant to 31 U.S.C. § 3717(a), and applicable collection related fees pursuant to 31 U.S.C. § 3717(e)(1).

48.    As of January 27, 2022, the unpaid balance owed to the United States by Kurotaki for the FBAR Penalties, the late payment penalty, applicable fees and interest, less any payments, was $11,490,377.85.

49.    The United States is entitled to a judgment against Kurotaki in the amount of $11,490,377.85 as of January 27, 2022, plus pre-judgment and post-judgment statutory accruals as provided by law from that date until fully paid.

WHEREFORE, the United States requests that the Court:

A.    Enter judgment in favor of the United States of America and against Osamu Kurotaki, in the amount of $11,490,377.85 as of January 27, 2022, plus pre-judgment and post-judgment statutory accruals as provided by law from that date until fully paid; and

B.    Award the United States of America its costs, and such other further relief as the Court deems just and proper.

//

//

//

//

//

//

DATED this 26th day of May, 2022.

CLARE E. CONNORS
United States Attorney
District of Hawaii

HARRY YEE
Assistant U.S. Attorney

*/s/ Jeremy N. Hendon*
JEREMY N. HENDON
Trial Attorneys, Tax Division
U.S. Department of Justice

Attorneys for Defendant
UNITED STATES OF AMERICA

## CERTIFICATE OF SERVICE

I hereby certify that, on the date and by the method of service noted below, a true and correct copy of the **UNITED STATES' ANSWER TO COMPLAINT AND COUNTERCLAIM** was served on the following at their last known address on May 26, 2022:

Served Electronically through CM/ECF:

HOWARD T. CHANG, AAL, ALC
HOWARD T. CHANG #1695-0
howardchang.crimtaxatty@hawaiiantel.net

COUNSEL PRO HAC VICE
GARYH. KUWADA (CBN 140284)
GARYH. KUWADA APC
gary@garykuwada.com

COUNSEL PRO HAC VICE
STEVEN R. MATHER (CBN 109566) MATHER I ANDERSON
smather@matheranderson.com


/s/ Jeremy N. Hendon
JEREMY N. HENDON
Trial Attorneys, Tax Division
U.S. Department of Justice