IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| OSAMU KUROTAKI,<br><br>                Plaintiff,<br><br>    v.<br><br>THE UNITED STATES OF AMERICA, THE UNITED STATES DEPARTMENT OF THE TREASURY, and THE INTERNAL REVENUE SERVICE,<br><br>                Defendants. | CIV. NO. 22-00063 JMS-WRP<br><br>ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, ECF NO. 40 |

## <u>ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, ECF NO. 40</u>

### I. **INTRODUCTION**

Before the court is a Motion by the United States, the United States Department of the Treasury ("Treasury), and the Internal Revenue Service ("IRS") (collectively, "Defendants"), requesting summary judgment as to Osamu Kurotaki's ("Kurotaki") willful failure to file a foreign bank account report ("FBAR") on various financial accounts for the years 2011, 2012, and 2013, as required by the Bank Secrecy Act ("BSA").  The court finds that there is a genuine issue of material fact as to the willfulness of Kurotaki's BSA violation, and thus DENIES Defendants' Motion for Summary Judgment.

## II. BACKGROUND

A.     **Factual Background**[1]

Kurotaki was born on January 15, 1965 in Japan. ECF No. 40-3 at PageID.232. In 1997, Kurotaki obtained a United States Permanent Resident Card, which he continued to hold in 2011, 2012, and 2013—the years at issue before the court. *Id*. at PageID.232–233. Kurotaki does not "speak English at all," ECF No. 46-1 ("Kurotaki Deposition") at PageID.1832, and despite his permanent resident status, he has primarily resided in Japan (not in the United States) since 2007. ECF No. 40-3 at PageID.234.

Since 2007, Tomohiko Kokuso ("Kokuso") has prepared Kurotaki's United States tax returns. *Id.* at PageID.235. Kurotaki relied on Kokuso, believing he was a competent professional as a licensed Certified Public Account who could speak both Japanese and English. *See* ECF No. 46-1 at PageID.1831–1833.

In 2014, the Japanese Tax Authority informed the IRS that Kurotaki received certain income from Japan that was not reported on his United States tax returns for the tax years 2008 through 2012. ECF No. 40-3 at PageID.238. An IRS examination of Kurotaki's unpaid taxes then expanded to include the failure to file FBARs. *Id.* at PageID.239.

---

[1] The court cites to the "First Stipulation of Agreed Matters," ECF No. 40-3 and the Defendant's Concise Statement of Facts, ECF No. 40-2, for facts that are not disputed by Kurotaki in his Concise Statement of Facts, ECF No. 46. Where the parties do not agree, the court cites directly to the record documents.

On January 19, 2021, the United States assessed civil penalties[2] against Kurotaki in excess of $10 million for his alleged willful failure to timely file FBARs pertaining to several foreign accounts[3] for the calendar years 2011, 2012, and 2013.  *Id.* at PageID.254.  "On June 3, 2021, Kurotaki paid to the IRS $3,000 for each of the years at issue (2011–2013) towards the FBAR Penalties," totaling $9,000 paid in fines.  ECF No. 40-1 at PageID.190.

**B.     Procedural Background**

Kurotaki filed his Complaint against the Defendants on February 14, 2022, requesting a refund of the $9,000 in penalty payments made.  ECF No. 1 at PageID.2.  On May 26, 2022, Defendants filed an Answer and Counterclaim to reduce to judgment the assessment of FBAR Penalties.  ECF No. 27.

Defendants filed the instant Motion for Summary Judgment on July 14, 2023.  ECF No. 40.[4]  Kurotaki filed an Opposition on September 11, 2023.

---

[2] Although 31 U.S.C. § 5321 imposes a six-year statute of limitations on assessing civil penalties, Kurotaki consented to extend the time for assessment until June 30, 2021.  ECF No. 40-3 at PageID.253–254.

[3] Information relating to the foreign accounts is set forth in ECF No. 40-3 at PageID.235–238.  Because the court determines that there is a genuine issue of material fact as to whether Kurotaki willfully failed to file the required FBAR reports, the court need not address which of the various accounts were or were not required to be reported by Kurotaki.

[4] Because the United States is seeking summary judgment on the issue of willfulness, essentially it is seeking summary judgment affirmatively as to its counterclaim, which alleges in part that "[t]he failure of Kurotaki to file timely and accurate FBARs with regard to the 2011, 2012, and 2013 calendar years was willful within the meaning of 31 U.S.C. § 5321(a)(5)."  ECF No. 27 at PageID.119.

3

ECF No. 47.  Defendants filed a Reply on September 18, 2023.  ECF No. 48.  A hearing was held on October 2, 2023.

### III.  STANDARD OF REVIEW

Summary judgment is proper when there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  "An issue is 'genuine' only if there is a sufficient evidentiary basis on which a reasonable fact finder could find for the nonmoving party, and a dispute is 'material' only if it could affect the outcome of the suit under the governing law."  *In re Barboza*, 545 F.3d 702, 707 (9th Cir. 2008) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

"The moving party initially bears the burden of proving the absence of a genuine issue of material fact."  *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010).  "When the moving party has carried its burden . . . its opponent must do more than simply show that there is some metaphysical doubt as to the material facts"; instead, the opponent must "come forward with specific facts showing that there is a genuine issue for trial."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986) (citation and internal quotation marks omitted).  "This burden is not a light one.  The non-moving party must show more than the mere existence of a scintilla of evidence."  *In re Oracle*, 627 F.3d at

387; *see also Anderson*, 477 U.S. at 248 (stating that a party cannot "rest upon the mere allegations or denials of his pleading" in opposing summary judgment).

When considering a motion for summary judgment, the court views the facts and draws reasonable inferences in the light most favorable to the nonmovant. *Scott v. Harris*, 550 U.S. 372, 378 (2007). "[T]he court does not make credibility determinations or weigh conflicting evidence. Rather, it draws all inferences in the light most favorable to the nonmoving party." *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007).

"When the party moving for summary judgment would bear the burden of proof at trial, 'it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial.'" *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.,* 213 F.3d 474, 480 (9th Cir. 2000) (quoting *Houghton v. South,* 965 F.2d 1532, 1536 (9th Cir. 1992)). And so, a Plaintiff moving for summary judgment on an affirmative claim "must establish beyond peradventure *all* of the essential elements of the claim . . . to warrant judgment in his [or her] favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). Put another way, a plaintiff's "showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States,* 799 F.2d 254, 259 (6th Cir. 1986) (quoting W. Schwarzer,

*Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact*, 99 F.R.D. 465, 488 (1984)).

## IV. ANALYSIS

### A. FBAR Penalties

Congress enacted the BSA in 1970 to battle "a serious and widespread use of foreign financial institutions, located in jurisdictions with strict laws of secrecy as to bank activity, for the purpose of violating or evading domestic criminal, tax, and regulatory enactments." *Cal. Bankers Ass'n v. Shultz*, 416 U.S. 21, 27 (1974). The use of foreign accounts led to the loss of "hundreds of millions in tax revenues" and had "debilitating effects" on the U.S. economy. *Id.* at 28.

The BSA, among other things, requires the Secretary of the Treasury to impose specific reporting requirements on certain individuals who maintain a relation with a "foreign financial agency." 31 U.S.C. § 5314.[5]

---

[5] Section 5314 provides, in part:

> (a) Considering the need to avoid impeding or controlling the export or import of monetary instruments and the need to avoid burdening unreasonably a person making a transaction with a foreign financial agency, the Secretary of the Treasury shall require a resident or citizen of the United States or a person in, and doing business in, the United States, to keep records, file reports, or keep records and file reports, when the resident, citizen, or person makes a transaction or maintains a relation for any person with a foreign financial agency. The records and reports shall contain the following information in the way and to the extent the Secretary prescribes:

(continued . . .)

In turn, Treasury regulations—promulgated under the BSA—require that a "United States person"[6] file an FBAR with the IRS for each calendar year that person has more than $10,000 in a foreign bank account.  31 C.F.R. §§ 1010.350(a), 1010.306(c).  If a United States person fails to file an FBAR, the BSA authorizes a civil penalty of up to $10,000 for each violation.  31 U.S.C. § 5321(a)(5)(B).  But if a United States person "willfully" fails to file an FBAR, the maximum penalty increases to the greater of either $100,000 or 50 percent of the value in the account at the time of the violation.  31 U.S.C. § 5321(a)(5)(C)–(D).  *See also United States v. Boyd*, 991 F.3d 1077, 1080 (9th Cir. 2021) ("Subparagraph (D) provides that for 'a violation involving a transaction,' the relevant amount is 'the amount of the transaction,' *id.* § 5321(a)(5)(D)(i), while for 'a violation involving a failure to report the existence of an account or any

---

> (1) the identity and address of participants in a transaction or relationship.
> (2) the legal capacity in which a participant is acting.
> (3) the identity of real parties in interest.
> (4) a description of the transaction.

[6] A " United States person" includes, in part:

> (1) A citizen of the United States;
> (2) A resident of the United States.  A resident of the United States is an individual who is a resident alien under 26 U.S.C. 7701(b) and the regulations thereunder but using the definition of "United States" provided in 31 CFR 1010.100(hhh) rather than the definition of "United States" in 26 CFR 301.7701(b)–1(c)(2)(ii).

31 C.F.R. § 1010.350(b).  Here, the parties agree that for the calendar years 2011–2013, Kurotaki was a "United States person" under this definition.  ECF No. 40-3 at PageID.232.

7

identifying information required to be provided with respect to an account,' the relevant amount is 'the balance in the account at the time of the violation,' *id.* § 5321(a)(5)(D)(ii). The statute thus penalizes willful violations involving misreporting or non-reporting of account information up to the greater of 50 percent of the account balance, or $100,000.") (footnote omitted).

**B.     Willfulness**

Although the BSA "requires the submission of foreign account reports, [it] does not define the term willful for failure to disclose." *Flint v. United States*, 162 Fed. Cl. 91, 129 (2022) (internal quotation marks omitted). The Treasury regulations likewise do not define "willful." *See* 31 C.F.R. § 1010.350. The Supreme Court, however, has observed in other contexts that "where willfulness is a statutory condition of civil liability, . . . it . . . cover[s] not only knowing violations of a standard, but reckless ones as well." *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 57 (2007).

And although the Ninth Circuit has not yet addressed the willfulness standard for civil FBAR violations, many other courts have held that "willful" under § 5321 includes both *knowing* and *reckless* violations of the statute. *See United States v. Horowitz*, 978 F.3d 80, 88 (4th Cir. 2020) ("[W]e conclude that, for the purpose of applying § 5321(a)(5)'s civil penalty, a 'willful violation' of the FBAR reporting requirement includes both knowing and reckless violations….");

*Norman v. United States*, 942 F.3d 1111, 1115 (Fed. Cir. 2019) (determining that willfulness in the context of § 5321(a)(5)(C) includes recklessness); *Bedrosian v. United States*, 912 F.3d 144, 152 (3d Cir. 2018) (holding that "a defendant has willfully violated 31 U.S.C. § 5314 when he either knowingly or recklessly fails to file [an] FBAR" (alteration and record citation omitted)); *United States v. Rum*, 995 F.3d 882, 889 (11th Cir. 2021) ("[W]e hold that willfulness in § 5321 includes reckless disregard of a known or obvious risk.  In so doing, we join with every other circuit court that has interpreted this provision."); *United States v. Goldsmith*, 541 F. Supp. 3d 1058, 1083 (S.D. Cal. 2021); *United States v. Cohen*, 2019 WL 8231039, at *7 (C.D. Cal. Dec. 16, 2019); *United States v. de Forrest*, 463 F. Supp. 3d 1150, 1157 (D. Nev. 2020).  The court agrees that the term "willful"—as used in § 5321—encompasses recklessness.

"[W]hen imposing a civil penalty for an FBAR violation, willfulness based on recklessness is established if the [taxpayer] (1) clearly ought to have known that (2) there was a grave risk that an accurate FBAR was not being filed and if (3) he was in a position to find out for certain very easily." *Horowitz*, 978 F.3d at 89 (quoting *Bedrosian*, 912 F.3d at 153 (cleaned up)).  This test applies an

9

objective standard.  *Id*; *see also United States v. Cohen*, 2019 WL 8231039, at *7 (C.D. Cal. Dec. 16, 2019) (applying the Fourth Circuit test from *Horowitz*).[7]

Further, "[m]ost courts to consider the issue have held that, for the purpose of civil FBAR penalties . . . willful blindness can suffice to show a willful violation." *United States v. Hughes*, 2021 WL 4768683, at *13 (N.D. Cal. Oct. 13, 2021) (emphasis omitted); *Goldsmith*, 541 F. Supp. 3d at 1084; *de Forrest*, 463 F. Supp. 3d 1150 at 1157; *United States v. Cohen*, 2019 WL 8231039, at *7 (C.D. Cal. Dec. 16, 2019); *see also Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 769 (2011) (finding that "willful blindness" could satisfy a knowledge requirement where the defendant (1) subjectively believed there was a high

---

[7] In another context, the Ninth Circuit has stated that:

> In general, a person acts recklessly when he consciously disregards a substantial and unjustifiable risk attached to his conduct, in gross deviation from accepted standards.  We have described reckless conduct as a highly unreasonable omission, involving not merely simple, or even inexcusable negligence, but an extreme departure from the standards of ordinary care, and which presents a danger that is either known to the actor or is so obvious that the actor must have been aware of it.

*Consumer Fin. Prot. Bureau v. CashCall, Inc.*, 35 F.4th 734, 748 (9th Cir. 2022) (internal quotation marks and citations omitted; cleaned up).  Here, the court need not determine whether to apply the *Horowitz* definition of recklessness which is specific to FBAR reporting or the more generic Ninth Circuit definition.  Under either standard, there is a genuine issue of material fact as to whether Kurotaki acted recklessly.

10

probability that a fact exists and (2) takes deliberate actions to avoid learning of that fact).[8]

> Recklessness, however, should not be conflated with negligence:
>
> Negligence is a less culpable mental state than actual knowledge, willful blindness, or recklessness, the three mental states that properly support a finding of willfulness. A willfully blind defendant is one who takes deliberate actions to avoid confirming a high probability of wrongdoing and who can almost be said to have actually known the critical facts. By contrast, a reckless defendant is one who merely knows of a substantial and unjustified risk of such wrongdoing, and a negligent defendant is one who should have known of a similar risk but, in fact, did not.

*Erickson Prods., Inc. v. Kast*, 921 F.3d 822, 833 (9th Cir. 2019) (alterations, internal quotation marks, and citations omitted).

### C. Application of Willfulness

There is no dispute that Kurotaki is a United States person who failed to file FBARs on certain foreign accounts. ECF No. 40-3. But, as set forth below, the court determines that there is a genuine issue of material fact as to whether Kurotaki willfully failed to follow the FBAR filing requirement.

---

[8] At its core, willful blindness or deliberate ignorance includes two requirements: suspicion and avoidance. For example, a Ninth Circuit model criminal jury instruction defines willful blindness (labeled as deliberate ignorance) as requiring that a defendant be aware of a "high probability" of the fact at issue, and that the defendant "deliberately avoided learning the truth." 4.9 Deliberate Ignorance, Manual of Model Criminal Jury Instructions for the District Courts of the Ninth Circuit, available at https://www.ce9.uscourts.gov/jury-instructions/node/859 (last visited October 10, 2023).

11

Kurotaki is a Japanese speaker who does not "speak English at all." ECF No. 46-1 at PageID.1832. He relied on his certified public accountant, Kokuso, to not only "take care of tax-related tasks" for his U.S. tax returns but to also serve as his "interpreter and translator." *Id*.

To that end, Kokuso provided Kurotaki an annual tax questionnaire form that included an explanation of the FBAR filing requirement ("FBAR notice") in both Japanese and English. The English portion of the FBAR notice—which contains identical language for the 2011, 2012, and 2013 tax years—states, in part, that:

> **U.S. taxpayers** are required to report their worldwide income; that is, income from both U.S. and foreign sources. In addition, taxpayers who have an interest in or signature or other authority over a financial account in a foreign country, such as a bank account, securities account, or other financial account are required to file a Form TD F 90-22.1, Report of Foreign Bank and Financial Accounts (FBAR), if the aggregate value of all such financial accounts exceeds $10,000 at any time during the calendar year.

*See* ECF No. 40-17 (2011 FBAR notice) at PageID.576; ECF No. 40-18 (2012 FBAR notice) at PageID.621; and ECF No. 40-19 (2013 FBAR notice) at PageID.666 (bold emphasis added).

But Kurotaki only read the Japanese version of the FBAR notice, which when translated into English contains different language.[9] It states in part:

> **U.S. resident taxpayers** are required to report their worldwide income, that is, income from both U.S. and foreign sources. In addition, taxpayers who have an interest in, are signatories of, or have other authorities over financial accounts in a foreign country, such as bank accounts, securities accounts, or other financial accounts, are required to file a Form TD F 90-22.1, Report of Foreign Bank and Financial Accounts (FBAR), if the aggregate value of all such financial accounts exceeds $10,000 at any time during FY2011.

*See* ECF No. 40-17 at PageID.599; ECF No. 40-18 at PageID.645; and ECF No. 40-19 at PageID.689 (bold emphasis added). That is, as relevant here, Kurotaki read a version of the FBAR notice that required "U.S. resident taxpayers"—not "U.S. taxpayers"—with financial accounts in a foreign country to file an FBAR if the $10,000 threshold was met.

In his deposition, Kurotaki explained that he "did not think that [the FBAR reporting requirement] was applicable to [him]," because he was not a "U.S. resident" at the time—meaning he did not reside in the United States—and because the questionnaire did not clarify that the FBAR reporting requirement applies to a "U.S. green card holder." ECF No. 46-1 at PageID.1837. He further explained

---

[9] To be clear, Kurotaki apparently could not read English. ECF No. 46-2 at PageID.1867. Thus, he read the Japanese version, as translated from the English version. In turn, that Japanese version read by Kurotaki has now been translated back into English for the court's review. *See* ECF No. 40-17 at PageID.599; ECF No. 40-18 at PageID.645; and ECF No. 40-19 at PageID.689.

13

that he believed the FBAR requirement "didn't apply to [him] because [he] has a Japanese passport, and [he] lived or reside in Japan with [his] family, and [he] works[s] there."  *Id.* at PageID.1837-1838.  Further, his "kids go to school in Japan."  *Id.* at PageID.1841.

And Kurotaki's understanding of the word "resident"—at least in a non-technical and colloquial sense—is reasonable.  Merriam-Webster defines "resident" as "living in a place for some length of time."  Definition of Resident, https://www.merriam-webster.com/dictionary/resident (last visited October 10, 2023); *see also* Black's Law Dictionary (11th Ed. 2019) (defining "resident" as one "who lives permanently in a particular place" or "who has a home in a particular place"); *see also Lichtman v. Miller*, 2021 WL 8533896, at *2 (C.D. Cal. Feb. 23, 2021) (stating that "residence" means living at a particular location and simply requires bodily presence in that place).  By these definitions, Kurotaki— who lived in Japan—was a "Japanese resident," not a "U.S. resident."  Given this apparent mistranslation—and whether applying an objective or subjective standard—there is a genuine issue of material fact as to whether Kurotaki acted willfully in not filing the required FBAR forms.

Although the United States offers other arguments in support of its position that summary judgment should be granted, none overcomes the standard at this stage—that viewing the evidence in the light most favorable to Kurotaki, he

14

had (again, based on an incorrect translation) an objectively reasonable, good faith belief that the FBAR requirement did not apply to him.  *See Anderson*, 477 U.S. at 249 (stating at summary judgment that "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial").  There is nothing intuitive in understanding the FBAR reporting requirements.  And, having been informed by his accountant that the requirement only applies to "U.S. resident taxpayers," there is certainly a genuine issue of material fact as to whether Kurotaki acted with the requisite showing of willfulness, whether viewed as intentional, reckless, or with willful blindness.  Further, given that the United States is essentially seeking summary judgment on its counterclaim (where it has the burden of proof), the United States clearly does not have "evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial."  *C.A.R. Transp. Brokerage Co.*, 213 F.3d at 480 (citation omitted).And, contrary to the government's argument, there is no evidence before the court that Kurotaki avoided obtaining professional advice or simply put his head in the sand.  Instead, Kurotaki retained an accountant that could translate tax questionnaires and tax returns into Japanese.  ECF No. 46-1 at PageID.1832–1834.  And through no fault of Kurotaki, Kokuso's translation was flawed—it stated that the reporting of worldwide income and the filing of FBARs applied to the "U.S. resident taxpayer."  As stated earlier, it was certainly

15

reasonable for Kurotaki to believe that these rules applied only to a person who resides in the United State, and he resided in Japan. So, this case differs from others cited by the government, such as *Horowitz*, 978 F.3d at 80. There, the court found that the taxpayers "could hardly conclude reasonably that the interest income from their Swiss accounts was not subject to taxes. At the very least, this tension should have triggered a question for their accountant." *Id*. at 89. Here, Kurotaki did obtain help from his accountant, but unfortunately received incorrect advice through an apparent mistranslation. And, applying a summary judgment standard, Kurotaki could reasonably conclude in good faith that he was not required to file any FBARs.

      Based on the unique evidence before the court, there is a genuine issue of material fact as to whether Kurotaki knew of a substantial and unjustified risk that he should file FBAR forms or that he took deliberate actions to avoid confirming a high probability of wrongdoing. *Erickson Prods*., 921 F.3d at 833.[10]

//

//

//

//

---

[10] Or, applying the test for recklessness as formulated in *Horowitz*, there is a genuine issue of material fact as to whether Kurotaki clearly ought to have known that there was a grave risk that he was required to file FBARs. 978 F.3d at 89.

16

## V. **CONCLUSION**

For the foregoing reasons, the court DENIES Defendants' Motion for Summary Judgment, ECF No. 40.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, October 10, 2023.



/s/ J. Michael Seabright
J. Michael Seabright
United States District Judge

*Kurotaki v. United States of America, et al.*, Civ. No. 22-00063 JMS-WRP, Order Denying Defendants' Motion for Summary Judgment, ECF No. 40